# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. JOSE GUZMAN-AMBROCIO, Appellant. | No. 86104-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Jose Guzman-Ambrocio appeals his convictions for rape of a child in the first degree and two counts of child molestation in the first degree. He argues that the State committed prosecutorial misconduct by inviting the jury to draw adverse inferences from the exercise of his rights to appear, testify at trial, and be assisted by counsel. We affirm.

I

In summer 2013, Guzman-Ambrocio met Jessica Gomez. At that time, Gomez had one child, I.V., who was six years old. Guzman-Ambrocio and Gomez began a romantic relationship and eventually had two children together.

In late 2015, the family moved into the home of Gomez's father in Mount Vernon, Washington. I.V. and her grandfather each had their own bedroom, and Guzman-Ambrocio and Gomez shared the master bedroom with the other children.

Guzman-Ambrocio and Gomez were briefly married, but the marriage was dissolved in early 2017. Around the same time, Guzman-Ambrocio moved back to Mexico.

In conversations with her mother and a forensic interviewer, I.V. disclosed that when she was eight years old and her family lived in Mount Vernon, Guzman-Ambrocio repeatedly touched her vulva under her underwear and penetrated her vagina with his fingers.[1]

The State charged Guzman-Ambrocio with one count of rape of a child in the first degree and two counts of child molestation in the first degree.

At trial, the State presented testimony from I.V., Gomez, a nurse practitioner, two law enforcement officers, and a child forensic interviewer. Guzman-Ambrocio testified on his own behalf, denying the allegations against him.

The jury found Guzman-Ambrocio guilty as charged, and the court imposed a standard-range sentence. Guzman-Ambrocio timely appealed.

II

Under both the United States and Washington Constitutions, criminal defendants have the right "to appear and defend in person," "to testify in [their] own behalf," to confront witnesses against them, and to have the assistance of counsel in their defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

During cross-examination, the following exchange took place between the prosecutor and Guzman-Ambrocio:

---

[1] Other instances of sexual abuse reportedly took place in Mexico, conduct for which Guzman-Ambrocio was never charged because it was extraterritorial.

[Prosecutor:] You were able to prepare for your testimony today, correct?

[Guzman-Ambrocio:] We all—well, yes, I do have to say the truth.

[Prosecutor:] You were able to prepare the best way to answer your questions for today?

[Guzman-Ambrocio:] All I say is the truth and nothing but the truth.

[Prosecutor:] What I asked you was you were able to prepare for testimony today?

[Guzman-Ambrocio:] No, because I didn't know what the different questions were going to be that I would be asked. All I'm doing is answering the questions that you, ma'am, are asking.

[Prosecutor:] For [defense counsel] you were able to know those questions ahead of time?

[Defense Counsel:] Your Honor, I'm going to object at this time. [The prosecutor] is getting into communication between the attorney and client. That is our privilege. She's asked the same question over and over again. She doesn't appear to like the answer.

[Prosecutor:] I object to the comments from [defense counsel].

The Court: Respond to his objection, please.

[Prosecutor:] I'm not asking about the substance of the comments. I'm asking about the defendant's preparation.

The Court: Sustained, the objection is sustained.

Based on this exchange, Guzman-Ambrocio argues that the prosecutor committed reversible misconduct by inviting the jury to draw adverse inferences from the exercise of his Sixth Amendment and article I, section 22, rights to appear, testify at trial, and be assisted by counsel.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was both improper and prejudicial in the context of the

entire record and the circumstances at trial.  State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

A

Guzman-Ambrocio first argues that the prosecutor's line of questioning was improper because it amounted to a classic generic tailoring argument.  We disagree.

"A claim of 'tailoring' alleges that the defendant conformed their testimony to the evidence they observed while attending trial."  State v. Carte, 27 Wn. App. 2d 861, 871, 534 P.3d 378 (2023).  Tailoring arguments are considered "generic" and improper if they are based solely on the defendant's presence at trial rather than on the defendant's direct examination or cross-examination.  Carte, 27 Wn. App. 2d at 871.  On the other hand, tailoring arguments are considered "specific" and proper if they are "based on the defendant's testimony, [given that] the argument is a logical attack on the defendant's credibility and does not burden the right to attend or testify."  State v. Berube, 171 Wn. App. 103, 117, 286 P.3d 402 (2012).

Contrary to Guzman-Ambrocio's argument, the prosecutor's questions were not based on Guzman-Ambrocio's presence at trial.  Nor did the prosecutor accuse or imply that Guzman-Ambrocio changed his testimony based on evidence presented at trial.  Indeed, the sustained objection from Guzman-Ambrocio's defense counsel was based on attorney-client privilege, not anything resembling a generic tailoring argument.

Paradoxically, Guzman-Ambrocio himself concedes that the prosecutor did not ask him whether he had heard the testimony of other witnesses, but nevertheless asserts that the prosecutor's line of questioning amounted to a classic generic tailoring

argument because it suggested that Guzman-Ambrocio had crafted a narrative for the jury. But that is not the case.

In Carte, for example, we held that the prosecutor suggested generic "tailoring" by stating during closing argument, "[The defense gave] you the defendant's side of the story, the side of the story that he gave you after he had the benefit of having heard all of the evidence in this case and hearing how everyone else testified in conforming his testimony to fit for certain facts, but not others." 27 Wn. App. 2d at 873. Here, the prosecutor did not make a generic tailoring argument.

B

Guzman-Ambrocio next contends that the prosecutor's cross-examination was improper because it invited the jury to draw adverse inferences from Guzman-Ambrocio's right to be assisted by counsel. The State disagrees, arguing that the prosecutor only tried to ascertain whether and to what extent Guzman-Ambrocio's testimony had been rehearsed, a proper topic of cross-examination for any witness. Based on the facts here, we agree with the State.

Guzman-Ambrocio relies on State v. Espey, 184 Wn. App. 360, 336 P.3d 1178 (2014), to support his argument that the prosecutor's line of questioning penalized his exercise of the right to counsel. In Espey, the prosecutor argued during closing argument that the jury should consider Espey's statement to the police in light of the time he spent fleeing and consulting attorneys. 184 Wn. App. at 364. The prosecutor stated that Espey had "lots of time to figure out what story he was going to tell the police[,]" and added that Espey exhibited the pattern of "a good liar." Espey, 184 Wn. App. at 364-65. Based on those comments, the court held that the prosecutor

improperly commented on Espey's right to counsel and that the resulting error was not harmless. 184 Wn. App at 366. The court explained:

> No prosecutor may employ language that denigrates the right of a criminal defendant to retain counsel of his choice, or otherwise limits the fundamental due process right of an accused to present a vigorous defense.

Espey, 184 Wn. App. at 367 (citing Sizemore v. Fletcher, 921 F.2d 667, 671 (6th Cir. 1990)).

But based on these facts, Guzman-Ambrocio's reliance on Espey is misplaced. "[E]ffective cross-examination is integral to due process." Farah v. Hertz Transporting, Inc., 196 Wn. App 171, 187, 383 P.3d 552 (2016). When a defendant "voluntarily asserts his right to testify" he puts his credibility at issue and thus "may be cross-examined in the same manner as any other witness." State v. Robideau, 70 Wn.2d 994, 998, 425 P.2d 880 (1967); see also State v. Graham, 59 Wn. App. 418, 427, 798 P.2d 314 (1990) ("A defendant may be vigorously cross-examined in the same manner as any other witness if he voluntarily asserts his right to testify."). Guzman-Ambrocio's credibility was at issue during trial. And the prosecutor's short inquiry was for the exclusive purpose of ascertaining Guzman-Ambrocio's credibility. While the prosecutor's statement appeared to at least imply Guzman-Ambrocio might have been coached, unlike in Espey, the language used by the prosecutor was not inflammatory; the prosecutor never stated or implied that Guzman-Ambrocio was a liar or that he exhibited the pattern of a liar. Nor did the prosecutor's questions create an "inference of guilt" out of Guzman-Ambrocio's decision to meet with counsel. Espey, 184 Wn. App. at 367.

Guzman-Ambrocio also relies on State v. Meza, 26 Wn. App. 2d 604, 529 P.3d 398 (2023), to support his argument. In Meza, the defendant, after arrest, made several statements after he was given Miranda warnings, both at the scene and later at the police station in a recorded interview.[2] 26 Wn. App. 2d at 608. After invoking his rights to remain silent and to counsel, he terminated the recorded interview and the officers ceased their questioning. Meza, 26 Wn. App. 2d at 608.

At trial, the prosecutor made the following remarks in his cross-examination of Meza, "I want to talk to you about some of the new information that previously [hadn't] been disclosed until Friday," referring to the day when Meza first testified during trial. 26 Wn. App. 2d at 608. Meza's defense counsel successfully objected, arguing that this was an improper comment on Meza's right to remain silent and to counsel. Meza, 26 Wn. App. 2d at 608. In sustaining the objection, the trial court and the prosecutor had the following exchange:

> [The Court:] Well, you can point out the differences. That—I have no—I don't think that's objectionable. It's the form of what you asked. [Using the phrase "new information"] is highly prejudicial. And that's the problem.
>
> It's not that you can't compare the statements he made on the stand or the statements he made to the officers. It's the way you're phrasing it that makes it prejudicial and makes it look like suddenly he's holding back. When he has the right to answer the questions when he's in front of the officers any way he wants to, and he can remain silent.
>
> You know this.
>
> [Prosecutor:] I do.
>
> [The Court:] So that's the problem.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Meza, 26 Wn. App. 2d at 608-09.

Despite being admonished by the trial court and unequivocally stating that he understood the prejudicial nature of his phrasing, the prosecutor continued making improper arguments during closing. "These statements implied, again and again throughout the State's closing, that Meza had a duty to supplement or correct his earlier statement to officers." Meza, 26 Wn. App. 2d at 617. Based on that, we held that the prosecutor's repeated remarks constituted an improper comment on Meza's exercise of his rights to remain silent and to counsel. Meza, 26 Wn. App. 2d at 617. Meza is distinguishable.

Here, after Guzman-Ambrocio's defense counsel's objection based on attorney-client privilege was sustained, the trial court did not admonish the prosecutor for the prejudicial nature of her remarks, and the prosecutor stopped her inquiry very shortly after. Further, the prosecutor did not bring up her exchange with Guzman-Ambrocio during closing argument, and thus there was no repeated pattern of problematic conduct like there was in Meza.

For those reasons, while nearing the troubled area of a comment on the right to counsel, we conclude that the prosecutor's inquiry on this record did not constitute an improper comment on Guzman-Ambrocio's right to be assisted by counsel. Guzman-Ambrocio's prosecutorial misconduct claim fails at the first hurdle. See Thorgerson, 172 Wn.2d at 442.[3]

---

[3] Guzman-Ambrocio also argues that his defense counsel was ineffective for failing to request a curative instruction from the trial court about the prosecutor's line of questioning on cross-examination. But because we conclude that the inquiry was not improper, his defense counsel's conduct cannot be considered deficient.

No. 86104-2-I/9

We affirm.[4]

_____
Mann, J.

WE CONCUR:

_____
Birk, J.

_____
Coburn, J.

---

[4] In a statement of additional grounds, Guzman-Ambrocio argues that "the State of Washington lacked jurisdiction to hear the charges against him because the alleged crimes occurred in Mexico." But each of the crimes Guzman-Ambrocio was charged with was alleged to have occurred in Skagit County, Washington. Guzman-Ambrocio himself admits in his brief that he was not being prosecuted for alleged conduct that occurred in Mexico. Lastly, at trial, the prosecutor was unequivocal in stating that Guzman-Ambrocio was not charged with any crimes that occurred in Mexico, and that she did not have any jurisdiction over conduct that occurred in Mexico. The trial court had proper jurisdiction over the case.